UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEVE WALLING, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Civ. Action No. |
| | ) | CLASS ACTION |
| Plaintiff, | ) ) | |
| | ) | COMPLAINT FOR VIOLATION OF THE |
| vs. | ) | FEDERAL SECURITIES LAWS |
| | ) | |
| KRAFT HEINZ COMPANY, BERNARDO HEES, PAULO BASILIO, DAVID KNOPF, GEORGE ZOGHBI, CHRISTOPHER R. SKINGER, VINCE GARLATI, and 3G CAPITAL INC., | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) ) ) | |
| | ) | DEMAND FOR JURY TRIAL |

Plaintiff Steve Walling, individually and on behalf of all others similarly situated, alleges the following based upon information and belief as to the investigation conducted by Plaintiff's counsel, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by Kraft Heinz Company ("Kraft Heinz" or the "Company"), securities analyst reports, press releases, and other public statements issued by, or about, the Company.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action brought on behalf of all purchasers of Kraft Heinz common stock between May 4, 2017 and February 21, 2019, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. Sections 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. Section 240.10b-5.  This Court has jurisdiction over the subject matter of this action under Section 27 of the Exchange Act, 15 U.S.C. Section 78aa, and 28 U.S.C. Section 1331, because this is a civil action arising under the laws of the United States of America.

3.     Venue is proper in this District under Section 27(c) of the Exchange Act, 15 U.S.C. Section 78aa(c), and 28 U.S.C. Section 1391(b) - (d).  The Company maintains its principal executive offices in this District, and many of the acts charged herein, including the dissemination of materially false and misleading information, occurred in substantial part in this District.

4.     In connection with the acts alleged in this Complaint, Defendants (defined below) directly or indirectly, used the means and instrumentalities of interstate commerce, including,

without limitation, the U.S. mail, interstate telephone and other electronic communications, and the facilities of the NASDAQ Global Select Market ("NASDAQ"), a national securities exchange.

## PARTIES

5.     Plaintiff Steve Walling, as set forth in the accompanying certification incorporated by reference herein, purchased Kraft Heinz common stock during the Class Period and has been damaged thereby.

6.     Defendant Kraft Heinz is one of the largest food and beverage companies worldwide. The Company was formed in 2015 when Kraft Foods Group, Inc. ("Kraft") merged with H.J. Heinz Holding Corporation ("Heinz").   The Company maintains its principal executive offices in Pittsburgh, Pennsylvania and its common stock is listed and trades on the NASDAQ under the ticker symbol "KHC."  Defendant Kraft Heinz operates on a 52 or 53 week fiscal year ending on the last Saturday in December in each calendar year.

7.     Defendant Bernardo Hees ("Hees") is, and was at all relevant times, Kraft Heinz's Chief Executive Officer.  Defendant Hees is a partner of 3G Capital Inc. ("3G Capital").

8.     Defendant Paulo Basilio ("Basilio") served as Kraft Heinz's Executive Vice President ("EVP") and Chief Financial Officer ("CFO") from its formation in July 2015 until October 1, 2017 when he was appointed as the Company's Zone President of U.S. business.  Defendant Basilio is a partner of 3G Capital.

9.     Defendant David Knopf ("Knopf") joined Kraft Heinz upon its formation in July 2015, initially serving as Vice President of Finance, Head of Global Budget & Business Planning, Zero-Based Budgeting, and Financial & Strategic Planning.  Prior thereto, Defendant Knopf held various roles at 3G Capital from 2013 to 2015.  On October 1, 2017, Defendant Knopf assumed Defendant Basilio's responsibilities when he was appointed as the Company's EVP and CFO. Defendant Knopf is a partner of 3G Capital.

10.     Defendant George Zoghbi ("Zoghbi") served as Kraft Heinz's Chief Operating Officer of U.S. business until October 1, 2017 when he became a full-time Special Advisor to the Company working with the Kraft Heinz Board of Directors and Defendants Hees and Basilio.

11.     Defendant Christopher R. Skinger ("Skinger") served as Kraft Heinz's Vice President, Global Controller and Principal Accounting Officer until June 18, 2018 when he resigned from the Company.

12.     Defendant Vince Garlati ("Garlati") has served as the Company's Global Controller and Principal Accounting Officer since June 18, 2018.

13.     Defendant 3G Capital is a private equity firm specializing in buyout investments in brands and businesses in the retail and consumer sectors.  During the Class Period, Defendant 3G Capital, and its affiliates including 3G Global Food Holdings, L.P. and 3G Capital Ltd., was one of the largest beneficial owners of Kraft Heinz common stock.

14.     Defendants Hees, Basilio, Knopf, Zoghbi, Skinger, and Garlati are collectively referred to hereinafter as the "Individual Defendants."  Kraft Heinz and the Individual Defendants are collectively referred to herein as "Defendants."

15.     Because of the Individual Defendants' executive positions, they each had access to the undisclosed adverse information about Kraft Heinz's business, operations, products, operational trends, controls, brands, markets, and present and future business prospects via internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof.

16.     It is appropriate to treat Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of Defendants identified above.  Each of the Individual Defendants was directly

- 3 -

involved in the management and day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, controls, brands, growth, cost trends, products and present and future business prospects, as alleged herein.  In addition, the Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, the false and misleading statements being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

17.     As officers and controlling persons of a publicly-held company whose common stock is registered with the SEC pursuant to the Exchange Act and trades on the NASDAQ, which is governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to promptly disseminate accurate and truthful information with respect to the Company's operations, business, products, markets, management, controls, brands, sales and cost trends and present and future business prospects.  In addition, the Individual Defendants each had a duty to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information.  Defendants' false and misleading misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

18.     The Individual Defendants, because of their positions of control and authority as Officers and/or Directors of the Company, were able to, and did, control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period.  Each Individual Defendant was provided with copies of the documents alleged herein to be misleading before or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected.  Accordingly, each Individual Defendant is responsible

for the accuracy of the public statements detailed herein and is, therefore, primarily liable for the representations contained therein.

19.     Each Defendant is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Kraft Heinz common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Kraft Heinz's business, operations, products, markets, management, brands, controls, sales and cost trends, demands, and present and future business prospects, and the intrinsic value of Kraft Heinz common stock; (ii) enabled an affiliate of Defendant 3G Capital to sell more than *$1.2 billion* of Kraft Heinz common stock at an artificially inflated price; and (iii) caused Plaintiff and the Class to purchase Kraft Heinz publicly-traded common stock at artificially inflated prices.

## SUBSTANTIVE ALLEGATIONS

20.     Formed in July 2015 when Kraft merged with and into Heinz (the "Merger"), Kraft Heinz is one of the largest food and beverage companies in the world with a portfolio of brands that include *Heinz, Kraft, Oscar Mayer, Philadelphia, Planters, Velveeta, Lunchables, Maxwell House, Capri Sun, and Ore-Ida*.  The Kraft businesses manufacture and market food and beverage products, including cheese, meats, refreshment beverages, coffee, packaged dinners, refrigerated meals, snack nuts, dressings, and other grocery products, primarily in the U.S. and Canada.  The Heinz businesses manufacture and market an extensive line of food products, including ketchup, condiments and sauces, frozen food, soups, beans and pasta meals, infant nutrition and other food products.

21.     In June 2013, H. J. Heinz Company was acquired by Heinz.  At that time, Heinz was controlled by Berkshire Hathaway Inc. ("Berkshire Hathaway") and an affiliate of Defendant 3G Capital, 3G Special Situations Fund III, L.P. ("3G Special Situations Fund"), each of whom beneficially owned approximately 50% of Heinz common stock.

22.     Just prior to the Merger, 3G Special Situations Fund transferred all of its Heinz common shares to 3G Global Food Holdings L.P. ("3G Global Food Holdings"), an affiliate of 3G Capital.  Throughout the Class Period, Berkshire Hathaway and 3G Global Food Holdings each owned approximately 25% of Kraft Heinz outstanding common shares and were the largest beneficial owners of Kraft Heinz common stock.

23.     Berkshire Hathaway is a holding company whose subsidiaries are engaged in a number of diverse business activities including insurance businesses, a freight rail transportation business and a group of utility and energy generation and distribution businesses.  3G Capital is a Brazilian-American, private equity firm known for achieving significant cost reduction in companies under its management by, among other things, implementing zero-based budgeting at its portfolio companies.  Zero-based budgeting is a process whereby budgets are determined only after all anticipated expenses in a given period have been justified as being necessary, irrespective of what the budget may have been in a prior period.

24.     After the Merger, Kraft Heinz was led by a group of executives that were, or had been, partners or formers employees of 3G Capital.  Defendant Hees, a partner at 3G Capital since July 2010, became CEO of Kraft Heinz upon the closing of the Merger after serving as CEO of Heinz since its formation in June 2013.  Likewise, Defendant Basilio, a partner of 3G Capital since July 2012, became EVP and CFO of Kraft Heinz upon the closing of the Merger after previously serving as CFO of Heinz since its formation in June 2013.

25.     On October 1, 2017, Defendant Knopf, then only 29 years of age, assumed Defendant Basilio's responsibilities and became EVP and CFO of Kraft Heinz.  Defendant Knopf has been a partner of 3G Capital since July 2012 and held various roles at 3G Capital from 2013 to 2015.

26.     Consistent with 3G Capital's philosophy, Defendants adopted a series of cost reduction initiatives after the Merger when integrating the operations of Kraft and Heinz.  Prior to

the beginning of Class Period, these cost-cutting initiatives helped lower costs and drive increases in highly leveraged Kraft Heinz's profitability even though the Company's sales were declining.

27.     By the beginning of the Class Period, however, Defendants knew or recklessly ignored that their belt-tightening measures had run their course, depleted the Company of valuable resources, marginalized its internal controls, and left Kraft Heinz's iconic brands badly damaged.

28.     During the Class Period, Kraft Heinz suffered an impairment in the value of its brands when they experienced significant sales declines and market share losses as consumers shifted to organic and lower priced private label offerings.  This dynamic left the Company with little pricing power and commoditized its product categories.  While Kraft Heinz's major brands were suffering sales declines and market share losses, the Company was also experiencing significant supply chain issues and cost inflation.  The combination of these factors severely slashed the product margins and profitability of the Company's major brands, causing an impairment in their value during the Class Period.

29.     For example, during the Class Period, Defendants knew the value of Kraft Heinz's Oscar Meyer cold cut trademarks were impaired when that business suffered sales declines and market share losses due, in part, to Defendants reluctance to invest the resources needed for product distribution and new equipment.  Similarly, Defendants knew the value of Kraft Heinz's Kraft cheese trademarks were impaired when that business suffered sales declines and market share losses to aggressively priced private-label offerings and cheaper brands sold by e-commerce retailers.

30.     Similarly, Defendants knew, or recklessly ignored, that the goodwill associated with Kraft Heinz Canadian retail business was impaired when year-over year sales for that business had been falling and its operations were suffering from product discontinuations, higher input costs and higher promotional expenses.

31.     In October 2018, unbeknownst to investors, Kraft Heinz received a subpoena from the SEC associated with its investigation into Kraft Heinz's accounting policies, procedures, and internal controls over financial reporting.

32.     In November 2018, Kraft Heinz agreed to sell its Canadian natural cheese business to Parmalat S.p.A for approximately $1.23 billion.

33.     Then, on February 21, 2019, Kraft Heinz issued a press release announcing that the Company had been improperly accounting for the costs of products sold and that it recorded impairment charges of *$15.4 billion* to lower the carrying amount of goodwill in certain reporting units, primarily U.S. Refrigerated and Canada Retail, and certain intangible assets, primarily the Kraft natural cheese and Oscar Mayer cold cuts trademarks.  The press release also announced Kraft Heinz's receipt of an SEC subpoena associated with its investigation into the Company's accounting policies, procedures, and internal controls and that the Company had been operating with material weaknesses in its system of internal controls over financial reporting.

34.     In response to this news, the price of Kraft Heinz common stock declined approximately *27.5%*, from $48.18 per share to $34.95 per share, erasing more than *$16 billion* of the Company's market capitalization on extremely heavy trading volume.

35.     Prior to the disclosure of the adverse facts detailed above, in August 2018, 3G Global Food Holdings sold more than *$1.2 billion* of Kraft Heinz common stock at an artificially inflated price.

**Kraft Heinz's Class Period SEC Filings**
**Violate SEC Disclosure Regulations**

36.     Item 8 of Form 10-K and Item 1 of Form 10-Q, via reference to Regulation S-X [17 C.F.R. §210] required Kraft Heinz to file with the SEC financial statements prepared in conformity with Generally Accepted Accounting Principles ("GAAP") during the Class Period.  Regulation S-X

[17 C.F.R. §210.4-01.(a)(1)] states that financial statements filed with the SEC that are not prepared in conformity with GAAP are presumed to be misleading and inaccurate.

37.     During the Class Period, the financial statements Kraft Heinz issued to investors and filed with the SEC on Forms 10-K and 10-Q improperly accounted for costs of products sold and intangible asset impairments, including goodwill, were materially misstated, and presented in violation of GAAP.

38.     Item 7 of Form 10-K and Item 2 of Form 10-Q required Kraft Heinz to furnish the information called for under Item 303 of Regulation S-K [17 C.F.R. §229.303], *Management's Discussion and Analysis of Financial Condition and Results of Operations* ("MD&A") during the Class Period.  In 1989, the SEC issued interpretative guidance associated with the requirements of Item 303 of Regulation S-K, which states, in pertinent part, as follows:

> A disclosure duty exists where a trend, demand, commitment, event or uncertainty is both presently known to management and reasonably likely to have material effects on the registrant's financial condition or results of operation.

39.     The MD&A Kraft Heinz filed with the SEC on Forms 10-K and 10-Q contained materially false and misleading disclosures about the Company's operating performance and failed to disclose material events and uncertainties associated with Kraft Heinz's major brands and internal control weaknesses, which were then known to management and were reasonably likely to have a material effect on the Company's future operating results.

40.     Item 1A of Form 10-K and Form 10-Q required Kraft Heinz to furnish the information called for under Item 503 of Regulation S-K [17 C.F.R. §229.503], *Risk Factors*.  Item 503 of Regulation S-K required Kraft Heinz to disclose the most significant matters making an investment in the Company risky.

41.     The Forms 10-K and 10-Q Kraft Heinz filed with the SEC during the Class Period failed to disclose material risks associated with its major brands and material internal control weaknesses that made an investment in the Company risky.

42.     Item 9A of Form 10-K and Item 4 of Form 10-Q required Kraft Heinz to furnish the information called for under Item 307 of Regulation S-K [17 C.F.R. §229.307], *Disclosure Controls and Procedures*, and Item 308 of Regulation S-K [17 C.F.R. §229.308], *Internal Control over Financial Reporting*, during the Class Period.

43.     Item 307 of Regulation S-K required Kraft Heinz's Forms 10-K and 10-Q during the Class Period to disclose Defendant Hees's, Basilio's and Knopf's conclusions about the effectiveness of Kraft Heinz's disclosure controls and procedures, defined by relevant regulation as the controls and procedures designed to ensure that information required to be disclosed in reports filed with the SEC is appropriately recorded, processed, summarized and reported.

44.     During the Class Period, Kraft Heinz falsely and misleadingly represented in its Forms 10-K and 10-Q that its disclosure controls were operating effectively when, as the Company has now admitted, they were not.  During the Class Period, these materially false and misleading representations were certified by Defendants Hees, Basilio and Knopf.

45.     Item 308 of Regulation S-K required Kraft Heinz's Forms 10-K and 10-Q during the Class Period to disclose, among other things, Defendant Hees's, Basilio's and/or Knopf's conclusions about the effectiveness of Kraft Heinz's internal control over financial reporting, defined by relevant regulation as:

- the process designed by, or under the supervision of, the issuer's principal executive and principal financial officers, or persons performing similar functions, and effected by the issuer's board of directors, management and other personnel, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles and includes those policies and procedures that:

- Pertain to the maintenance of records that in reasonable detail accurately and fairly reflect the transactions and dispositions of the assets of the issuer;

- Provide reasonable assurance that transactions are recorded as necessary to permit preparation of financial statements in accordance with generally accepted accounting principles, and that receipts and expenditures of the issuer are being made only in accordance with authorizations of management and directors of the issuer; and

- Provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use or disposition of the issuer's assets that could have a material effect on the financial statements.

46.     During the Class Period, Kraft Heinz falsely and misleadingly represented in its Forms 10-K and 10-Q that its internal controls over financial reporting were operating effectively when, as the Company has now admitted, it operated with material weaknesses.  These materially false and misleading representations were certified by Defendants Hees, Basilio and/or Knopf during the Class Period.

**Materially False and Misleading
Statements Issued During the Class Period**

47.     The Class Period begins on May 4, 2017.  After the market closed on May 3, 2017, Kraft Heinz issued a press release announcing its financial results for the 2017 first quarter, the period ended April 1, 2017.  The press release contained materially false and misleading financial data, and falsely represented that net income attributable to common shareholders totaled $893 million during the quarter.

48.     Later that day, Kraft Heinz held a conference call with analysts and investors to discuss the Company's operations and earnings release.  During the conference call, Defendants Hees, Basilio and Zoghbi made materially false and misleading statements associated with Kraft Heinz's operating results and/or its brands, Kraft cheese, Oscar Mayer meat and Canadian businesses.

49.     On May 4, 2017, Kraft Heinz filed with the SEC its Form 10-Q for the quarter ended April 1, 2017 (the "Q1 2017 Form 10-Q") signed by Defendants Basilio and Skinger.  The Q1 2017 Form 10-Q contained materially false and misleading financial statements, MD&A, risk factor and disclosure control and internal control disclosures, as well as Defendant Hees's and Basilio's certifications thereon.

50.     On August 3, 2017, Kraft Heinz issued a press release announcing its financial results for the 2017 second quarter, the period ended July 1, 2017.  The press release contained materially false and misleading financial data and falsely represented that net income attributable to common shareholders totaled $1,159 million during the quarter.

51.     Later that day, Kraft Heinz held a conference call with analysts and investors to discuss the Company's operations and earnings release.  During the conference call, Defendants Hees, Basilio and Zoghbi made materially false and misleading statements associated with Kraft Heinz's operating results and/or its brands, Kraft cheese, Oscar Mayer meat and Canadian businesses.

52.     On August 4, 2017, Kraft Heinz filed with the SEC its Form 10-Q for the quarter ended July 1, 2017 (the "Q2 2017 Form 10-Q") signed by Defendants Basilio and Skinger.  The Q2 2017 Form 10-Q contained false and misleading financial statements, MD&A, risk factor and disclosure control and internal control disclosures, as well as Defendant Hees's and Basilio's certifications thereon.

53.     On August 9, 2017, Kraft Heinz filed a prospectus with the SEC offering to the public $1.5 billion aggregate principal amount of floating rate senior notes.  The prospectus incorporated by reference Kraft Heinz's materially false and misleading Q1 2017 Form 10-Q and Q2 2017 Form 10-Q.

54.    On September 8, 2017, Kraft Heinz issued a press release announcing the following management changes effective October 1, 2017: (a) the appointment of Defendant Paulo Basilio as U.S. Zone President responsible for all facets of the Company's U.S. business; (b) the appointment of Defendant Knopf as EVP and CFO; (c) the transition of Defendant Zoghbi from COO of the Company's U.S. business to Strategic Advisor role working with the Kraft Heinz Board of Directors, Defendant Hees and Defendant Basilio.

55.    On November 1, 2017, Kraft Heinz issued a press release announcing its financial results for the 2017 third quarter, the period ended September 30, 2017.  The press release contained materially false and misleading financial data, and falsely represented that net income attributable to common shareholders totaled $944 million during the quarter.

56.    Later that day, Kraft Heinz held a conference call with analysts and investors to discuss the Company's operations and earnings release.  During the conference call, Defendants Hees, Basilio, Knopf and Zoghbi made materially false and misleading statements associated with Kraft Heinz's operating results and/or its brands, Kraft cheese, Oscar Mayer meat and Canadian businesses.

57.    On November 6, 2017, Kraft Heinz filed a Form 8-K (the "November 2017 Form 8-K") with the SEC announcing that, on October 31, 2017, the Audit Committee of the Company's Board of Directors concluded that financial statements included in the Q1 2017 Form 10-Q and Q2 2017 Form 10-Q "should not be relied upon due to the misstatement in adopting new Accounting Standards Update 2016-15 ("ASU 2016-15")."  ASU 2016-15 requires companies to record cash receipts from beneficial interests within trade receivable securitization programs as cash provided from investing activities in the statement of cash flows.

58.    The November 2017 Form 8-K stated Kraft Heinz would file an amended Q1 2017 Form 10-Q and Q2 2017 Form 10-Q with the SEC to "correctly classify certain items in our cash

flow statements," which the Company represented "[did] not reflect a change in our underlying business and do not impact any other components of our consolidated financial statements, including the income statement, or balance sheet, including cash and cash equivalents."

59.     The November 2017 Form 8-K also noted that failure of an existing control relating to the adoption and disclosure of new accounting standards constituted a material weakness in the Company's internal control over financial reporting and that the Company's disclosure controls and procedures were not effective, stating, in pertinent part, as follows:[1]

> In reevaluating the effectiveness of the design and operation of our disclosure controls and procedures as of April 1, 2017 and July 1, 2017, and as part of our assessment as to whether or not there were any changes during the third quarter ended September 30, 2017 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting, we have concluded that the ASU 2016-15 adoption misstatement, as described above, was primarily the result of a failure of an existing control surrounding the adoption and disclosure of new accounting standards.  **We have concluded that this control failure constitutes a material weakness in internal control over financial reporting and that our disclosure controls and procedures were not effective**.  The remediation of this material weakness will primarily include steps to improve the validation and documentation of new accounting standards' impacts and communication with the appropriate individuals, including the importance of adherence to the internal control structure that is in place regarding the adoption of new accounting standards and guidance.  We plan to have these remediation steps in place during our 2017 fiscal year, but will allow for testing to determine operating effectiveness before concluding on remediation.

60.     On November 7, 2017, Kraft Heinz filed an amended Q1 2017 Form 10-Q and Q2 2017 Form 10-Q with the SEC, each signed by Defendants Knoft and Skinger, to correct the items noted in ¶¶57-59 above.  The amended Q1 2017 Form 10-Q and Q2 2017 Form 10-Q each contained materially false and misleading financial statements, MD&A, risk factor and disclosure control and internal control disclosures, as well as Defendant Hees's and Knopf's certifications thereon.

---

[1]     Unless otherwise noted, all emphasis herein is added.

61.     On November 7, 2017, Kraft Heinz filed with the SEC its Form 10-Q for the quarter ended September 30, 2017 (the "Q3 2017 Form 10-Q") signed by Defendants Knopf and Skinger. The Q3 2017 Form 10-Q contained false and misleading financial statements, MD&A, risk factor and disclosure control and internal control disclosures, as well as Defendant Hees's and Knopf's certifications thereon.

62.     On February 15, 2018, Kraft Heinz held a conference call with analysts and investors to update the Company's post-integration operations.  During the conference call, Defendant Hees made materially false and misleading statements associated with Kraft Heinz's brands, Kraft cheese and/or Oscar Mayer meat businesses.

63.     On February 16, 2018, Kraft Heinz issued a press release announcing its financial results for the 2017 fourth quarter and fiscal year end, the periods ended December 30, 2017.  The press release contained materially false and misleading financial data and falsely represented that net income attributable to common shareholders totaled $8,003 million and $10,999 million during the fourth quarter and fiscal year ended December 30, 2017, respectively.

64.     Later that day, Kraft Heinz held a conference call with analysts and investors to discuss the Company's operations and earnings release.  During the conference call, Defendants Hees, Basilio, Knopf and Zoghbi made materially false and misleading statements associated with Kraft Heinz's operating results and/or its brands, Kraft cheese, Oscar Mayer meat and Canadian businesses.

65.     On February 16, 2018, Kraft Heinz filed with the SEC its Form 10-K for the year ended December 30, 2017 (the "2017 Form 10-K") signed by Defendants Hees, Knopf and Skinger. The 2017 Form 10-K contained materially false and misleading financial statements, MD&A, risk factor and disclosure control and internal control disclosures, as well as Defendant Hees's and Knopf's certifications thereon.

- 15 -

66.     On May 2, 2018, Kraft Heinz issued a press release announcing its financial results for the 2018 first quarter, the period ended March 31, 2018.  The press release contained materially false and misleading financial data and falsely represented that net income attributable to common shareholders totaled $993 million during the quarter.

67.     Later that day, Kraft Heinz held a conference call with analysts and investors to discuss the Company's operations and earnings release.  During the conference call, Defendants Hees and Knopf made false and misleading statements associated with Kraft Heinz's operating results and/or its brands, Kraft cheese, Oscar Mayer meat and Canadian businesses.

68.     On May 3, 2018, Kraft Heinz filed with the SEC its Form 10-Q for the quarter ended March 31, 2018 (the "Q1 2018 Form 10-Q"), signed by Defendants Knopf and Skinger.  The Q1 2018 Form 10-Q contained materially false and misleading financial statements, MD&A, risk factor and disclosure control and internal control disclosures, as well as Defendant Hees's and Knopf's certifications thereon.

69.     On June 6, 2018, Kraft Heinz filed a prospectus with the SEC offering to the public $3.0 billion aggregate principal amount of senior notes.  The prospectus incorporated by reference Kraft Heinz's materially false and misleading 2017 Form 10-K and Q1 2018 Form 10-Q.

70.     On June 6, 2018, Kraft Heinz filed a Form 8-K with the SEC announcing that Defendant Skinger, the Company's controller and principal accounting officer, left the Company "***for personal reasons to pursue a new career opportunity outside of Chicago***" and that Defendant Garlati would succeed Defendant Skinger as the Company's principal accounting officer and Global Controller effective June 18, 2018.

71.     On August 3, 2018, Kraft Heinz issued a press release announcing its financial results for the 2018 second quarter, the period ended June 30, 2018.  The press release contained materially

false and misleading financial data and falsely represented that net income attributable to common shareholders totaled $756 million during the quarter.

72.     Later that day, Kraft Heinz held a conference call with analysts and investors to discuss the Company's operations and earnings release.  During the conference call, Defendants Hees, Basilio and Knopf made materially false and misleading statements associated with Kraft Heinz's operating results and/or its brands, Kraft cheese, Oscar Mayer meat and Canadian businesses.

73.     On August 3, 2018, Kraft Heinz filed with the SEC its Form 10-Q for the quarter ended June 30, 2018 (the "Q2 2018 Form 10-Q") signed by Defendants Knopf and Garlati.  The Q2 2018 Form 10-Q contained materially false and misleading financial statements, MD&A, risk factor and disclosure control and internal control disclosures, as well as Defendant Hees's and Knopf's certifications thereon.

74.     On September 5, 2018, Kraft Heinz presented at the Barclays Global Consumer Staples Conference.  During the conference call, Defendant Hees made materially false and misleading statements associated with Kraft Heinz's growth, brands, and meat business.

75.     On November 1, 2018, Kraft Heinz issued a press release announcing its financial results for the 2018 third quarter, the period ended September 29, 2018.  The press release contained materially false and misleading financial data and falsely represented that net income attributable to common shareholders totaled $630 million during the quarter.

76.     Later that day, Kraft Heinz held a conference call with analysts and investors to discuss the Company's operations and earnings release.  During the conference call, Defendants Hees, Basilio and Knopf made materially false and misleading statements associated with Kraft Heinz's operating results and/or its brands, Kraft cheese and Canadian businesses.

77.     On November 2, 2018, Kraft Heinz filed with the SEC its Form 10-Q for the quarter ended September 29, 2018 (the "Q3 2018 Form 10-Q") signed by Defendants Knopf and Garlati. The Q3 2018 Form 10-Q contained materially false and misleading financial statements, MD&A, risk factor and disclosure control and internal control disclosures, as well as Defendant Hees's and Knopf's certifications thereon.

78.     The statements referenced in ¶¶47-53, 55-69, and 71-77 above were materially false and misleading when made because they misrepresented and failed to disclose the following adverse facts, which were known to Defendants or recklessly disregarded by them as follows:

(a)     that Kraft Heinz had been materially overstating the value of certain of its important product lines;

(b)     that Kraft Heinz's intangible assets, including goodwill, associated with, at least, its Kraft natural cheese, Oscar Mayer cold cuts, U.S. Refrigerated and Canadian retail businesses were materially impaired;

(c)     that Kraft Heinz had been employing improper accounting policies, procedures, and associated with its procurement function, including, but not limited to, agreements, side agreements, and changes or modifications to its agreements with its vendors;

(d)     that Kraft Heinz had been improperly accounting for the costs of products sold;

(e)     that Kraft Heinz had been operating with material weaknesses in its internal controls over financial reporting, including those controls related to the accounting and disclosure of new accounting standards, its cost of products sold, its procurement function, the impairment of goodwill and the impairment of intangible assets;

(f)     that Kraft Heinz's operating results were materially misstated and Defendants' disclosures related thereto were materially false and misleading;

- 18 -

(g)     that Kraft Heinz's financial statements contained material errors, were presented in violation of GAAP and were materially false and misleading;

(h)     that the risk factor disclosures in filings Kraft Heinz made with the SEC were materially false and misleading;

(i)     that the MD&A disclosures in filings Kraft Heinz made with the SEC were materially false and misleading;

(j)     that the representations about Kraft Heinz's disclosure controls and internal control over financial reporting in filings the Company made with the SEC were materially false and misleading;

(k)     that the certifications issued by Defendants Hees, Basilio and Knopf on Kraft Heinz's disclosure controls and internal controls over financial reporting were materially false and misleading; and

(l)     that based on the foregoing, Defendants lacked a reasonable basis for their positive statements about Kraft Heinz's then-current business operations and future financial prospects.

79.     After the market closed on February 21, 2019, Kraft Heinz filed with the SEC a Form 8-K announcing goodwill and intangible asset impairments during the 2018 fourth quarter of *$7.1 billion* and *$8.3 billion*, respectively.  The Form 8-K noted, in pertinent part:

> During the fourth quarter, as part of the Company's normal quarterly reporting procedures and planning processes, the Company concluded that, based on several factors that developed during the fourth quarter, the fair values of certain goodwill and intangible assets were below their carrying amounts.  As a result, **the Company recorded non-cash impairment charges of $15.4 billion to lower the carrying amount of goodwill in certain reporting units, primarily U.S. Refrigerated and Canada Retail, and certain intangible assets, primarily the Kraft and Oscar Mayer trademarks.  These charges resulted in a net loss attributable to common shareholders of $12.6 billion and diluted loss per share of $10.34.**

- 19 -

80.     The Form 8-K also disclosed that the SEC was investigating the Company's accounting practices and policies and that Kraft Heinz had been improperly accounting for the costs of products sold, stating, in pertinent part, as follows:

> **The Company received a subpoena in October 2018 from the U.S. Securities and Exchange Commission (the "SEC") associated with an investigation into** the Company's procurement area, more specifically **the Company's accounting policies, procedures, and internal controls related to its procurement function, including, but not limited to, agreements, side agreements, and changes or modifications to its agreements with its vendors**.

> Following this initial SEC document request, the Company together with external counsel launched an investigation into the procurement area. **In the fourth quarter of 2018, as a result of findings from the investigation, the Company recorded a $25 million increase to costs of products sold as an out of period correction as the Company determined the amounts were immaterial to the fourth quarter of 2018 and its previously reported 2018 and 2017 interim and year to date periods**. Additionally, **the Company is in the process of implementing certain improvements to its internal controls to mitigate the likelihood of this occurring in the future** and has taken other remedial measures. The Company continues to cooperate fully with the U.S. Securities and Exchange Commission.

> At this time, the Company does not expect the matters subject to the investigation to be material to its current period or any prior period financial statements.

81.     In response to this news, the price of Kraft Heinz common stock declined approximately **27.5%**, from $48.18 per share to $34.95 per share, erasing more than **$16 billion** of the Company's market capitalization on extremely heavy trading volume.

82.     The market for Kraft Heinz common stock was open, well-developed and efficient at all relevant times. As a result of the alleged materially false and/or misleading statements, and/or omissions of material fact alleged herein, Kraft Heinz common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased Kraft Heinz common stock relying upon the integrity of the market price of Kraft Heinz common stock and market information relating to Kraft Heinz, and have been damaged thereby.

83.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Kraft Heinz common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading.  Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

84.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused, or were a substantial contributing cause of, the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false or misleading statements about Kraft Heinz's business, controls, brands and its operations.  These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Kraft Heinz, its business, financial reporting, products, brands, and financial prospects, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing Kraft Heinz common stock at artificially inflated prices, thus causing the damages complained of herein.

### Additional Scienter Allegations

85.     As alleged herein, Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. Defendants, by virtue of their receipt of information reflecting the true facts regarding Kraft Heinz,

- 21 -

their control over, and/or receipt and/or modification of Kraft Heinz's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Kraft Heinz, participated in the fraudulent scheme alleged herein.

86.     The fraudulent scheme described herein could not have been perpetrated during the Class Period without the knowledge and complicity of, or at least the reckless disregard by, personnel at the highest levels of the Company, including the Individual Defendants.  Given their executive level positions with Kraft Heinz, the Individual Defendants controlled the contents of Kraft Heinz's public statements during the Class Period.  The Individual Defendants were each provided with or had access to the information alleged herein to be false and/or misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information, the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations that were being made were false and misleading.  As a result, each of the Individual Defendants was responsible for the accuracy of Kraft Heinz's corporate statements and are, therefore, responsible and liable for the representations contained therein.

87.     Plaintiff also alleges that scienter of Defendants Hees, Basilio and Knopf who, as executive officers of the Company, knew or recklessly ignored facts related to the core operations of Kraft Heinz, which can be imputed to Kraft Heinz.

88.     In addition, the scienter of the Defendants is underscored by the Sarbanes-Oxley mandated certifications of Defendants Hees, Basilio and Knopf, which acknowledged their responsibility to investors for establishing and maintaining controls to ensure that material

information about Kraft Heinz was made known to them and that the Company's disclosure related controls and internal control over financial reporting were operating effectively.

89.     Defendants were also motivated to engage in this course of conduct to allow 3G Global Food Holdings, an affiliate of Defendant 3G Capital, to sell more than **$1.2 billion** of Kraft Heinz common stock at an artificially inflated price in August 2018.

## LOSS CAUSATION

90.     As detailed herein, during the Class Period, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Kraft Heinz common stock. This scheme operated as a fraud or deceit on Class Period purchasers of Kraft Heinz common stock by failing to disclose and misrepresenting the adverse facts detailed herein. When Defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the price of Kraft Heinz common stock declined significantly as the prior artificial inflation came out of the price of Kraft Heinz common stock.

91.     By concealing from investors the adverse facts detailed herein, Defendants presented a misleading picture of Kraft Heinz's business, prospects and operations. Defendants' false and misleading statements had the intended effect and caused Kraft Heinz common stock to trade at artificially inflated levels throughout the Class Period, reaching as high as $93.88 per share on June 7, 2017. As a result of their purchases of Kraft Heinz common stock at artificially inflated prices during the Class Period, Plaintiff and the other Class members suffered economic loss, *i.e.,* damages, under the federal securities laws.

92.     When the truth about the Company was revealed to the market, the price of Kraft Heinz common stock fell significantly. The decline removed the inflation from the price of Kraft Heinz common stock, causing real economic loss to investors who had purchased Kraft Heinz

common stock during the Class Period. The decline in the price of Kraft Heinz common stock when the corrective disclosure came to light was a direct result of the nature and extent of Defendants' fraudulent misrepresentations being revealed to investors and the market. The timing and magnitude of the price decline in Kraft Heinz common stock negates any inference that the loss suffered by Plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to Defendants' fraudulent conduct.

93.    The economic loss, *i.e.,* damages, suffered by Plaintiff and the other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the price of Kraft Heinz common stock and the subsequent significant decline in the value of Kraft Heinz common stock when Defendants' prior misrepresentations and other fraudulent conduct were revealed.

### APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET DOCTRINE

94.    At all relevant times, the market for Kraft Heinz common stock was an efficient market for the following reasons, among others:

(a)    Kraft Heinz common stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient, national stock market;

(b)    as a regulated issuer, Kraft Heinz filed periodic public reports with the SEC and the NASDAQ;

(c)    Kraft Heinz regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)    Kraft Heinz was followed by securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their

respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

95.    As a result of the foregoing, the market for Kraft Heinz common stock promptly digested current information regarding Kraft Heinz from all publicly available sources and reflected such information in the price of Kraft Heinz common stock.  Under these circumstances, all purchasers of Kraft Heinz common stock during the Class Period suffered similar injury through their purchase of Kraft Heinz common stock at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

96.    The statutory safe harbor provided for forward-looking statements under the Private Securities Litigation Reform Act of 1995 does not apply to any of the allegedly false statements plead in this Complaint.  The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not adequately identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Kraft Heinz who knew that the statement was false when made.

## COUNT I

### Violation of Section 10(b) of the Exchange Act and Rule l0b-5
### Promulgated Thereunder Against All Defendants Except 3G Capital

97.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.  3G Capital is not named as a Defendant for purposes of this Count.

98.     During the Class Period, Defendants disseminated or approved the materially false and misleading statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

99.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements made not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company common stock during the Class Period.

100.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Kraft Heinz common stock.  Plaintiff and the Class would not have purchased Kraft Heinz common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

101.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Kraft Heinz common stock during the Class Period.

**COUNT II**

**Violation of Section 20(a) of
the Exchange Act Against the Individual Defendants and 3G Capital**

102.     Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.  For purposes of this Count, Defendants include the Individual Defendants and 3G Capital.

103.     The Individual Defendants and 3G Capital acted as controlling persons of Kraft Heinz within the meaning of Section 20(a) of the Exchange Act.

104.     By virtue of their positions as officers and/or directors of Kraft Heinz, and/or their ownership of Kraft Heinz common stock, the Individual Defendants had the power and authority to, and did, cause Kraft Heinz to engage in the wrongful conduct alleged.

105.     Defendant 3G Capital, together with its affiliates including 3G Global Food Holdings, was one of the largest beneficial owners of Kraft Heinz common stock during the Class Period. Defendant 3G Capital, together with its affiliates, by virtue of its ownership of Kraft Heinz common stock had the power and authority to, and did, cause Kraft Heinz to engage in the wrongful conduct alleged.

106.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Kraft Heinz common stock during the Class Period.

107.     By reason of such conduct, Defendants are liable pursuant to Section 20(a) of the Exchange Act.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for judgment as follows:

A.       Designating Plaintiff as Lead Plaintiff and declaring this action to be a class action properly maintained pursuant to Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B.       Awarding Plaintiff and other members of the Class damages together with interest thereon;

C.       Awarding Plaintiff and other members of the Class their costs and expenses of this litigation, including reasonable attorneys' fees, expert fees and other costs and disbursements; and

D.       Awarding Plaintiff and other members of the Class such other and further relief as the Court deems just and proper under the circumstances.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: February 26, 2019                LAW OFFICE OF ALFRED G.
                                         YATES, JR., P.C.


                                             /s/ Alfred G. Yates, Jr.
                                         Alfred G. Yates, Jr. (PA 17419)
                                         Gerald L. Rutledge (PA 62027)

                                         300 Mt. Lebanon Blvd., Suite 206-B
                                         Pittsburgh, PA  15234
                                         Telephone:  412/391-5164
                                         412/471-1033 (fax)
                                         yateslaw@aol.com

                                         ROBBINS GELLER RUDMAN
                                           & DOWD LLP
                                         SAMUEL H. RUDMAN
                                         DAVID A. ROSENFELD
                                         58 South Service Road, Suite 200
                                         Melville, NY  11747
                                         Telephone:  631/367-7100
                                         631/367-1173 (fax)
                                         srudman@rgrdlaw.com
                                         drosenfeld@rgrdlaw.com

- 28 -

JOHNSON FISTEL
MICHAEL I. FISTEL JR.
40 Powder Springs Street
Marietta, GA  30064
Telephone:  470/632-6000
770/200-3101 (fax)
michaelf@johnsonfistel.com

*Attorneys for Plaintiff*